IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL DWYER MCCULLOUGH, | § | |
| TDCJ #645881, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3974 |
| | § | |
| NATHANIEL QUARTERMAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Michael Dwyer McCullough (TDCJ #645881, former TDCJ # 372858, # 972822) filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. McCullough proceeds *pro se* and *in forma pauperis*. At the Court's request, McCullough has filed a more definite statement of his claims. (Doc. # 14). He has also filed an amended complaint. (Doc. # 45). The defendants have filed a joint motion for summary judgment. (Doc. # 62). McCullough has filed more than one response. (Docs. # 71, # 72, # 73, # 74). After reviewing all of the pleadings, and the applicable law, the Court grants summary judgment in favor of the defendants and dismisses this case for reasons that follow.

## I.  BACKGROUND

McCullough is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") at the Stiles Unit in Beaumont, Texas. McCullough's claims stem from an incident that allegedly occurred at the Wynne Unit in Huntsville, Texas, where he was formerly assigned from February of 2006 through

October of 2006.  McCullough sues the following individuals employed by TDCJ at the Wynne Unit facility:  (1) Warden Thomas Prasifka; (2) Assistant Warden Robin Robinson; (3) Assistant Warden Lonny Johnson; (4) Officer Steven Spivey; (5) Sergeant Louis Young; (6) Officer Vicky Turner; (7) Sergeant Kelvin Leigh; (8) Sergeant Bobby Rigsby; (9) Officer Pedro Maldonado; (10) Sergeant Adan Garcia; (11) Grievance Investigator Joanna Alford; (12) Captain Rob Kukua; (13) Counsel Substitute Bart Bomhof; and (14) Property Officer Shannan Dunaway.  McCullough also sues TDCJ Director Nathaniel Quarterman and R.W. Lee of the TDCJ Office of the Inspector General.

McCullough alleges that Officer Spivey, Sergeant Young, and Officer Turner used excessive force against him by spraying him with "chemical gas" during an altercation that occurred on July 11, 2006, and kicking him while he was on the floor.  Prior to the use of force, McCullough maintains that Sergeant Leigh and Sergeant Rigsby threatened and verbally harassed him.  McCullough contends that he wrote letters to Director Quarterman and R.W. Lee of the TDCJ Office of Inspector General, complaining that he was being harassed by officers at the Wynne Unit.  McCullough also reportedly complained in person to Warden Prasifka and other supervisors serving on the Unit Classification Committee that correctional officers at the Wynne Unit were "giving [him] a hard time."  McCullough contends, however, that these supervisory officials failed to offer any assistance with these "ongoing conflicts" or to protect him from the use of force that occurred on July 11, 2006.

After the use of force occurred, Sergeant Garcia and Officer Maldonado placed

McCullough in pre-hearing detention, where disciplinary charges were filed against him in connection with the July 11, 2006 incident.  In disciplinary case #20060329967, McCullough was accused of violating prison rules by attempting to assault Officer Spivey, which prompted the use of force on July 11, 2006.  McCullough was found guilty following a disciplinary hearing on August 18, 2006.  As a result, McCullough spent 15 days in solitary confinement and his classification status was reduced to Level III.  McCullough's privileges were curtailed and he was also restricted to his cell for 45 days.  McCullough complains that the hearing officer and his counsel substitute, Captain Kukua and Counsel Substitute Bomhof, respectively, conspired with the other defendants to convict him of the disciplinary charges, which he contends were "false."  McCullough filed Step 1 and Step 2 grievances to challenge the disciplinary conviction, but his appeal was unsuccessful.  McCullough adds that Grievance Inspector Alford failed to investigate or process his grievances appropriately in connection with the use-of-force incident.

As a result of the disciplinary proceeding and his stay in prehearing detention, McCullough complains that he was denied access to all of his legal materials by Sergeant Garcia, Officer Maldonado, and Property Officer Dunaway.  Without access to his legal documents, McCullough complains that he was unable to file a notice of appeal, a motion "for reinstatement," or a memorandum in support of reinstatement in a federal habeas corpus proceeding.  *See McCullough v. Dretke*, Civil Action No. H-05-3033 (S.D. Tex.).  McCullough claims that he received notice of the final judgment in that proceeding on July

3

6, 2006, and that he was preparing these instruments when the altercation involving Officer Spivey occurred. Because he was denied access to his legal materials, McCullough complains that he was denied access to courts.

Alleging violations of his constitutional rights, McCullough seeks compensatory and punitive damages from each defendant. The defendants have filed a joint motion for summary judgment, arguing that McCullough is not entitled to relief. McCullough has filed more than one response and he requests leave to amend his complaint to add a new claim. The parties' contentions are addressed below, beginning with the defendants' motion for summary judgment, under the governing standard of review.

## II.    <u>STANDARD OF REVIEW</u>

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary

4

relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law.  Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The

moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B*

6

*Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).   Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal

citations and quotations omitted).  Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III.   <u>DISCUSSION</u>

#### A.   **Exhaustion of Administrative Remedies**

The defendants argue that McCullough failed to exhaust available administrative remedies regarding his complaints against Director Quarterman, Warden Prasifka, Counsel Substitute Bomhof, Inspector Lee, and Grievance Investigator Alford.  Therefore, the defendants argue that McCullough's claims against these individuals are barred from review because he failed to comply with the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), by presenting his claims for consideration by prison officials before filing suit.

Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law."  The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

TDCJ has a formal two-step administrative grievance process that is mandated by the Texas Legislature. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable); *see also Almond v. Tarver*, 468 F. Supp. 2d 886, 896 (E.D. Tex. 2006) (citing 37 TEX. ADMIN. CODE ANN. § 283.3 (West 2006)). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id*. Step 2 grievances are reviewed at the state level. *See id*.; *Wendell*, 162 F.3d at 891. An inmate must pursue a grievance through both steps of the administrative process for his claim to be considered exhausted. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The defendants have provided copies of all of the grievances filed by McCullough while he was in custody at the Wynne Unit, which extended from February 2006 through October of 2006. (Doc. # 62, Exhibit A). A review of those exhibits reflects that McCullough filed many grievances while assigned to the Wynne Unit, but that he did not file any against Director Quarterman, Warden Prasifka, Counsel Substitute Bomhof, Inspector

9

Lee, or Grievance Investigator Alford regarding the claims that he attempts to raise here.  A Texas prisoner must pursue a grievance by presenting his claims through both steps to satisfy the exhaustion requirement.  *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).  Because McCullough did not file a grievance regarding his claims against Director Quarterman, Warden Prasifka, Counsel Substitute Bomhof, Inspector Lee, and Grievance Investigator Alford, he did not comply with prison procedures.

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which demands compliance with prison procedural rules.  As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524.  By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citing *Booth*, 532 U.S. at 737).  In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id.* (citations omitted).

10

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules. *See Woodford*, 548 U.S. at 96-98. McCullough's failure to file a grievance regarding his claims against Director Quarterman, Warden Prasifka, Counsel Substitute Bomhof, Inspector Lee, and Grievance Investigator Alford means that he has failed to comply with prison procedures and the exhaustion requirement found in § 1997e(a). *See Carbe v. Lappin*, 492 F.3d 325, 238 (5th Cir. 2007). This violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"). Accordingly, the defendants are entitled to summary judgment on this issue. Alternatively, McCullough's claims against these defendants fail for other reasons set forth further below.

### B.    Qualified Immunity

The defendants contend that McCullough has failed to establish a constitutional violation and that, even assuming that a violation occurred, they are entitled to qualified immunity from McCullough's claims against them. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which

a reasonable person would have known." *Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 418 (5th Cir. 2008).  The Supreme Court has characterized the doctrine as protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

In determining whether qualified immunity applies to an official's actions, a reviewing court follows a two-step sequential test.  *See Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss*., 543 F.3d 221, 224-25 (5th Cir. 2008).  The threshold question has two parts.  The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'"  *Id.* (quoting *Saucier*, 533 U.S. at 201)  If there is evidence to support the violation of a constitutional right, the final step of the sequential analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton*, 543 F.3d at 225 (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  *See Gates*, 537 F.3d at 419.  An official need only plead his good faith,

which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

In this instance, the defendants argue that McCullough has failed to establish that their actions violated a clearly established constitutional right. The defendants argue further that, even if a violation occurred, their actions were objectively reasonable under the circumstances. At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with a determination whether McCullough's claims lack merit. Accordingly, the Court first addresses whether McCullough has raised a genuine issue of material fact on whether the defendants violated his constitutional rights in connection with the July 11, 2006 use-of-force incident that forms the basis of his complaint.

### 1. Use of Force

McCullough claims that Sergeant Young, Officer Spivey, and Officer Turner used excessive force against him on July 11, 2006, by spraying him with chemical gas and kicking him after he had been taken down to the floor during an altercation. Claims of excessive force in the prison context are governed by the Eighth Amendment, which prohibits cruel and

13

unusual punishment.  In that context, it is well established that not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action under the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  In that respect, the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation and quotation omitted).

To prevail on an excessive-force claim, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result.  *See Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing *Hudson*, 503 U.S. at 7; and *Jackson v. Culbertson*, 984 F.2d 699 (5th Cir. 1993)); *see also Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (referencing 42 U.S.C. § 1997e(e), which precludes a civil action by a "prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury" in connection with an excessive-force claim).  Relevant factors to consider in evaluating an excessive-force claim include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  *See Hudson*, 503 U.S. at 7; *Gomez v. Chandler*, 163 F.3d 921, 923 (5th

Cir. 1999).  These factors are considered below to determine whether the force used was excessive under the Eighth Amendment standard.

### a.     Excessive Force

The defendants contend that McCullough fails to establish a valid claim under the Eighth Amendment because he does not demonstrate that force was used excessively for malicious purposes, rather than in a good faith effort to maintain order.   According to the defendants, Officer Spivey contacted his supervisor, Sergeant Young, after McCullough refused several orders to exit his cell on July 11, 2006.  (Doc. # 62, Exhibit F).  As Sergeant Young was counseling McCullough about the consequences of refusing to obey orders, McCullough reportedly became angry.   As a precautionary measure, Sergeant Young instructed Officer Spivey to place McCullough in handcuff restraints.  After handcuffs were applied to his left wrist, McCullough resisted and began to struggle with Officer Spivey. During the struggle, McCullough jerked one arm away and attempted to strike Officer Spivey.  Sergeant Young was concerned that McCullough might free his other arm and use the handcuffs as a weapon to harm Officer Spivey.  Fearing for Officer Spivey's safety, Sergeant Young administered one ounce of chemical spray.  Officer Turner, who arrived to assist Officer Spivey, also administered one ounce of chemical spray to subdue McCullough. McCullough was escorted to a shower so that he could wash off any chemical spray and then taken to the infirmary to be examined by a nurse.

According to TDCJ policy, officers may use force if an offender fails to comply with a legitimate order, to maintain or regain control of a unit or any part thereof and/or there is imminent danger of bodily injury to staff, offenders, or other persons. (Doc. # 62, Exhibit G, at 5). Before force is authorized, officers are instructed to use all reasonable actions to defuse the situation. (*Id.* at 10). Reasonable actions include: listening to the offender; attempting to calm or reason with him; explaining the consequences of his behavior; notifying a supervisor; requesting a video camera and operator; securing the area; requesting additional staff; and making a visible show of force by having additional staff present. (*Id.*).

McCullough does not dispute that he refused to obey Officer Spivey's repeated orders to leave his cell or that he resisted Officer Spivey's attempt to place him in handcuffs. The defendants insist that force was used in compliance with TDCJ policy after reasonable actions were taken to defuse the situation. The defendants maintain further that limited force was needed to subdue McCullough after he struggled with Officer Spivey and that only a small amount of chemical spray was used to subdue him. McCullough disputes that he attempted to assault Officer Spivey or that any force was necessary. This would seem to raise a fact issue about whether the force used was excessive to the need. Even if the force was unnecessary, however, the defendants contend that McCullough still fails to establish a constitutional violation because he cannot show that he suffered the requisite physical injury as a result of the altercation at issue.

**b.      Some Physical Injury**

The Fifth Circuit has emphasized that "some physical injury" is an indispensable element of an excessive-force claim. *Gomez*, 163 F.3d at 923. The Fifth Circuit has explained further that the prisoner "must have suffered from the excessive force a more than *de minimis* physical injury," adding that "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* at 924. However defined, it is clear that some physical injury is required. As another court in this circuit has concluded, a "physical injury" in this context "is an observable or diagnosable medical condition requiring treatment by a medical care professional." *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997). In that regard, a more than *de minimis* "physical injury" is not a sore muscle, aching back, scratch, abrasion, or bruise of the type that would not otherwise force a "free world person" to seek medical treatment. *See id.*

In this case, the record shows that McCullough was examined by a nurse immediately after the use of force that occurred on July 11, 2006, and that photographs were taken to document his condition. (Doc. # 62, Exhibit F, at 36-40). The nurse noted that McCullough had a slightly swollen upper lip, a scratch above his right eyebrow, a slightly swollen right cheek, a scratch on his lower lumbar area, a scratch on his right chest, and a scratch on his left upper arm. (*Id.*). The nurse determined that all of the injuries were minor and that no treatment was needed. (*Id.*).

This record demonstrates that McCullough suffered nothing more than soreness, abrasions, or bruises of the type that would not otherwise force a free world person to seek

17

medical treatment. *See Luong*, 979 F. Supp. at 486.  Accordingly, McCullough has not raised a genuine issue of material fact on whether he suffered a more than *de minimis* physical injury of the kind required to establish an excessive-force claim.  *See id.*; *see also Siglar*, 112 F.3d at 193 (holding that a sore, bruised ear lasting for three days was *de minimis* and not sufficient to raise a valid claim for excessive force); *Wyatt v. Shaw*, 62 F.3d 394, 1995 WL 450120, *1 (5th Cir. 1995) (unpublished) (concluding that temporary, *de minimis* injuries as a result of a prisoner's exposure to the residual effects of the chemical agent are insufficient to establish a constitutional violation).  Because McCullough has not alleged or shown that he suffered an actionable injury as a result of the use of force that occurred on July 11, 2006, McCullough has failed to demonstrate a valid claim for excessive force and he otherwise fails to establish a constitutional violation of the Eighth Amendment.  The defendants are entitled to summary judgment on this issue.

### 2.     Verbal Threats and Harassment

McCullough complains that, prior to the use of force that occurred on July 11, 2006, Sergeant Leigh and Sergeant Rigsby verbally threatened and harassed him.  The defendants maintain that, even if this assertion is true, these allegations do not establish a constitutional violation or an actionable claim under 42 U.S.C. § 1983.

However offensive or threatening a correctional officer's comments may be, it is well established that verbal insults or harassment in the prison context do not amount to a constitutional violation and are not actionable under 42 U.S.C. § 1983.  *See Calhoun v.*

*Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Siglar*, 112 F.3d at 193; *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *Bender v. Brumley*, 1 F.3d 271, 274 n.1 (5th Cir. 1993); *Spicer v. Collins*, 9 F. Supp. 2d 673, 683 (E.D. Tex. 1998) (citations omitted).  Notably, the PLRA expressly provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005).  To the extent that McCullough's complaint against Sergeant Leigh and Sergeant Rigsby concerns verbal conduct that resulted only in emotional pain and suffering, his allegations fail to state a constitutional violation or a valid claim for relief under 42 U.S.C. § 1983.  The defendants are entitled to summary judgment on this issue.

### 3.    Denial of Due Process

McCullough complains that Captain Kukua and Counsel Substitute Bomhof conspired with others to convict him of false disciplinary charges that were filed against him in connection with the use of force that occurred on July 11, 2006, in disciplinary case #20060329967.  As outlined above, McCullough was accused of violating prison rules on July 11, 2006, by attempting to assault Officer Spivey.  After a disciplinary hearing on August 18, 2006, Captain Kukua found McCullough guilty as charged.  As punishment, McCullough spent 15 days in solitary confinement and his classification status was reduced

19

to Level III.  McCullough's privileges were curtailed and he was also restricted to his cell for 45 days.

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest.  *See Sandin v. Conner*, 515 U.S. 472 (1995).  In particular, only those sanctions that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause.  *Id.* at 487.  For example, Texas inmates who are eligible for mandatory supervision have a constitutional expectancy of early release under the Texas mandatory supervision scheme and a protected liberty interest in the good-time credits that they have earned.  *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) (addressing the mandatory supervision scheme in place prior to September 1, 1996); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007) (addressing the mandatory supervision scheme in place before and after September 1, 1996).  Thus, if a prisoner is eligible for mandatory supervision, prison officials may not forfeit good-time credit during a prison disciplinary hearing without providing the requisite level of due process.

McCullough, who is serving a 60-year prison sentence for aggravated robbery and a 99-year prison sentence for aggravated sexual assault, is not eligible for mandatory

20

supervision.  Likewise, McCullough did not lose any good-time credits as a result of his disciplinary conviction.  The only punishment imposed was a temporary loss of privileges, a short-term cell restriction, 15 days in solitary confinement, and a reduction in classification status.  None of these sanctions implicate a liberty interest of the sort protected by the Due Process Clause.  According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life.  *See id*.  The Fifth Circuit has also decided that reductions in a prisoner's class status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause.  *See Malchi*, 211 F.3d at 958; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).  Because the sanctions imposed against McCullough as a result of his disciplinary conviction do not implicate a protected liberty interest, he fails to demonstrate a constitutional violation in connection with the punishment that he received. Accordingly, the defendants are entitled to summary judgment on this issue.

### 4.      Failure to Investigate Grievances

McCullough complains that Grievance Investigator Joanna Alford failed to properly investigate grievances that he filed concerning the use of force that occurred on July 11, 2006, in violation of his right to due process.  The record reflects that McCullough filed

21

many grievances while he was in custody at the Wynne Unit from February of 2006 through October of 2006. (Doc. # 62, Exhibit A). This record reflects that McCullough's grievances concerning the use of force that occurred on June 11, 2006, were not investigated by Alford. Rather, the incident was the subject of an administrative review that was authorized by Warden Prasifka pursuant to the TDCJ Use of Force Plan. (Doc. # 62, Exhibit G). The record contains a lengthy use of force report which documents the investigation conducted by TDCJ officials. (Doc. # 62, Exhibit F). That report found that the use of force was appropriate under the circumstances and recommended that no action be taken against the officers involved. (*Id.*).

Based on this record, McCullough fails to show that his grievances about the June 11, 2006 use of force were not investigated. To the extent that McCullough disagrees with the result of the investigation, allegations such as these fail to state a constitutional violation. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). In that regard, the Fifth Circuit has held that a prisoner "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." *Id.* at 374. Therefore, any claim arising from McCullough's displeasure with the result of the investigation "is indisputably meritless." *Id.* Accordingly, the defendants are entitled to summary judgment on this issue.

### 5.    Failure to Protect

McCullough complains that several supervisory officials, including Director Quarterman, Warden Prasifka, Assistant Warden Johnson, Assistant Warden Robinson, and

22

Investigator Lee, failed to intervene after he complained of harassment at the Wynne Unit or to protect him from the July 11, 2006 use of force.  It appears that McCullough sues these defendants in their supervisory capacity only.  These defendants argue that McCullough fails to allege facts showing that they had the requisite personal involvement with his claims.  The defendants argue further that McCullough fails to establish a valid failure-to-protect claim under the circumstances of this case.

A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).  Supervisory officials can be held liable only if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.  *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.").  Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted).

23

After the use of force occurred on July 11, 2006, McCullough alleges that he sent a letter to the Governor of Texas, complaining about the incident.  McCullough claims that this letter was forwarded to Director Quarterman, who is responsible for the actions of all correctional officers employed by TDCJ.  After the use of force occurred, McCullough also complained to Investigator Lee of the Office of Inspector General.  (Doc. # 62, Exhibit H). Prior to the use of force, McCullough sent several letters to Inspector Lee, complaining about problems he was having with a correctional officer who is not a party to this suit (Officer Sevilla).  (*Id.*).  In response, Lee advised McCullough to address his complaints through the grievance system.  (*Id.*).  McCullough claims further that he complained in person to Warden Prasifka, Assistant Warden Robinson, and Assistant Warden Johnson, that certain correctional officers at the Wynne Unit were giving him a "hard time."

McCullough's letters and complaints after the use of force occurred on July 11, 2006, were not sufficient to afford the supervisory officials with advance notice of a problem and do not establish a failure to intervene.  Likewise, the letters and general complaints that McCullough made prior to the use of force on July 11, 2006, which concerned verbal harassment and harassment by officers not involved with the use of force, do not establish the requisite causal connection between the alleged failure to intervene and the use of force that McCullough complains about.  In that respect, assuming that his letters and complaints were sufficient to notify officials of a problem, McCullough does not allege facts showing that they failed to protect him from harm.

24

To establish a failure-to-protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). To act with deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient. *See id.*; *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

In addition to his grievances and correspondence, the defendants have supplied McCullough's classification records for the time that he was assigned to the Wynne Unit. (Doc. # 62, Exhibits B & C). McCullough does not show that he was classified inappropriately or that officials assigned to the Unit Classification Committee failed to take his need for safety into consideration. According to the record, McCullough's correspondence with Inspector Lee prior to the use of force focused on individuals and events unrelated to the complaint in this case. (Doc. # 62, Exhibit H). To the extent that McCullough claims that the supervisory defendants failed to protect him from the use of force that occurred on July 11, 2006, McCullough does not show that he received a threat from any of the officers involved or that he asserted a need for protection from these officers.

Under these circumstances, McCullough's general allegation that the defendants failed to protect him from harassment by officers or to prevent the use of force rises only to the level of mere negligence, if anything, and is not sufficient to state a failure-to-protect claim. *See Farmer*, 511 U.S. at 837; *see also Neals*, 59 F.3d at 533 (concluding that allegations amounting to a claim of negligence in the failure-to-protect context did not raise a non-frivolous constitutional claim); *Oliver*, 914 F.2d at 60 (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983). Likewise, as noted above, the record does not show that McCullough suffered a more than *de minimis* injury as a result of the use of force which forms the basis of his complaint. Absent the requisite physical injury, McCullough fails to demonstrate that any of the supervisory officials were deliberately indifferent to his need for protection. *See Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). Thus, McCullough fails to raise a genuine issue of material fact or show that any of the supervisory officials violated his constitutional rights under the Eighth Amendment. Accordingly, the defendants are entitled to summary judgment on this issue.

### 6.    Deprivation of Property

McCullough claims that Officer Maldonado and Sergeant Garcia wrongfully confiscated his personal property following the use of force that occurred on July 11, 2006, when he was transferred to pre-hearing detention. In an amended complaint, McCullough claims that Property Officer Dunaway refused to return legal materials that were confiscated

on July 11, 2006, and an FM radio booster. McCullough appears to claim that he was deprived of his property without due process.

Because he is a prison inmate, McCullough has no legally protected interest in the possession of personal property as a general matter. In that respect, it is settled that prison officials may impose reasonable restrictions on the type and amount of personal property that inmates are allowed to possess while in prison. *See McRae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983) (citing *Sullivan v. Ford*, 609 F.2d 197 (5th Cir. 1980)); *Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990). To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is accomplished without due process. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). When deprivation of property is occasioned by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

In this case, the property at issue was confiscated on July 11, 2006, when McCullough was removed from his regular cell and transferred to pre-hearing detention to face disciplinary charges. The defendants present evidence showing that McCullough was allowed to keep certain items of his personal property while he was in pre-hearing detention. (Doc. # 62, Exhibit B). The rest of his personal possessions were inventoried and stored in the property office. (*Id.* at 9). On July 14, 2006, all items of personal property that had been stored in the property office, including his legal materials, were returned to McCullough,

with the exception of the FM radio booster.  (*Id.*; *see also* Doc. # 62, Exhibit D).  The defendants report that the FM radio booster was not returned because McCullough did not have a property registration form to document his ownership.  (Doc. # 62, Exhibit A, at 113-16).  McCullough filed grievances to challenge the confiscation of the FM radio booster, but the decision to confiscate that property was upheld.  (*Id.*).

This record establishes that McCullough was deprived of his personal property and legal materials for, at most, three days.  To the extent that his FM radio booster was confiscated pursuant to prison policy, McCullough does not allege or show that he was denied notice or an opportunity to be heard.  McCullough does not raise a genuine issue of material fact showing that he was deprived of personal property in violation of his constitutional rights.  Accordingly, the defendants are entitled to summary judgment on this claim.

### 7.    Access to Courts

McCullough complains that, because his personal property and legal materials were stored in the property office following his transfer to pre-hearing detention on July 11, 2006, he was denied access to courts.  The defendants dispute that McCullough was denied the opportunity to present a meritorious claim or that he was wrongfully deprived of access to the courts.

The constitutional right implicated by McCullough's allegation is the right to access the courts that is generally protected by the First Amendment, the Due Process Clause, and

the Equal Protection Clause.  *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (collecting cases that demonstrate the "unsettled . . . basis of the constitutional right of access to courts"). Prisoners clearly have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). However, the right of access for prisoners is not unlimited.  *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997)). The right encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.  *See Jones*, 188 F.3d at 325 (citing *Lewis*, 518 U.S. at 351). In that regard, inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355.  Instead, they are guaranteed "the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*.

McCullough claims that he was unable to file a motion to reinstate or a notice of appeal in a federal habeas corpus proceeding in the Southern District of Texas, in *McCullough v. Dretke*, Civil Action No. H-05-3033.  McCullough filed that action in 2005 to challenge his 1993 state court convictions for aggravated robbery and for aggravated sexual assault in Harris County cause numbers 619930 and 619929.  The defendants note that McCullough's petition was dismissed as barred by the statute of limitations on June 30, 2006, making any motion or notice of appeal due no later than July 30, 2006.  McCullough

concedes that he received notice of the final judgment on July 6, 2006. Because McCullough's legal materials were returned on July 14, 2006, he had time to file a motion or a notice of appeal before the July 30, 2006 deadline. Thus, McCullough does not show that the temporary deprivation of legal materials denied him access to the courts.

More importantly, even if the temporary deprivation of his legal materials delayed his ability to file a motion or a notice of appeal, McCullough does not allege facts showing that the defendants intentionally denied him the opportunity to file a non-frivolous claim or that his ability to pursue a valid case was substantially hindered. To establish a denial of access to the courts, a prisoner must demonstrate "actual injury." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing *Lewis*, 518 U.S. at 351-54); *see also Christopher*, 536 U.S. at 415 (emphasizing that the right of access to courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."). In other words, to prevail, McCullough must establish that "his position as a litigant was prejudiced by his denial of access to the courts." *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998).

In this case, the record shows that the respondent filed a motion to dismiss McCullough's habeas petition as time-barred in February of 2006. (Civil No H-05-3033, # 13). McCullough filed more than one response to that motion. (Civil No. H-05-3033, # 15, # 16, # 22, # 23, #25). The petition was dismissed as barred by the governing statute of limitations in an order entered on June 30, 2006. (Civil H-05-3033, Doc. # 26). After the final judgment was entered, McCullough filed numerous motions to reinstate or for

30

reconsideration of the dismissal in his federal habeas corpus proceeding. (Civil No. H-05-3033, Docs. # 29, # 32, # 37, # 55, # 60).   All of these efforts were unsuccessful. McCullough also filed several notices of appeal.  (Civil No. H-05-3033, Docs. # 28, # 33, # 44, # 59, # 66).  The Fifth Circuit considered McCullough's appeal from the district court's denial of his motion for reconsideration and denied a certificate of appealability.  (Civil No. H-05-3033, Doc. # 71).

McCullough does not show that his habeas corpus petition was dismissed in error or that he was prevented from raising a valid argument in response to the final judgment.  Nor does he show that, but for the delay, his appeal would have been successful.   Thus, McCullough fails to raise a genuine issue of material fact showing that he had, but was deprived of the opportunity to present, a meritorious argument.  McCullough's conclusory allegations do not demonstrate that he was denied the right to bring a non-frivolous claim concerning his underlying convictions, his sentence, or the conditions of his confinement. Absent a showing that McCullough was denied the ability to bring a non-frivolous claim, he fails to establish that any of the defendants improperly interfered with his constitutional right of access to courts.  *See Jones*, 188 F.3d at 325.  Accordingly, the defendants' motion for summary judgment on this issue is granted.

### 8.    Objective Reasonableness

Because McCullough has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis.  *See Hathaway v. Bazany*,

507 F.3d 312, 320 (5th Cir. 2007).  Nevertheless, the defendants argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (emphasis added).  If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341 (1986).  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, McCullough, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. McCullough does not meet that burden here.  As outlined above, the summary judgment record reflects that minimal force was used on July 11, 2006, and that McCullough suffered only *de minimis* injuries as a result of that altercation.  Prison officials conducted a thorough investigation of

32

the use of force and determined that the force used was reasonable under the circumstances and that the officers acted appropriately. (Doc. # 62, Exhibit F). McCullough was charged with a disciplinary violation, but his punishment did not violate the Due Process Clause. His placement in pre-hearing detention resulted in only a temporary deprivation of property, which lasted three days at most and did not result in the denial of access to courts. He fails to allege facts showing that his complaints to supervisory officials were ignored or that any supervisory official was deliberately indifferent to a serious risk of harm. McCullough's allegations do not raise a genuine issue of material fact on whether the actions taken were unreasonable under the circumstances and are not sufficient to overcome the defendants' assertion of qualified immunity in this instance. The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

### C.    McCullough's Request for Leave to Amend

McCullough seeks leave to amend his complaint to add claims for relief from his disciplinary conviction in case #20060329967 under the federal habeas corpus statutes. (Doc. # 74). McCullough's motion for leave to amend the complaint is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides as follows:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

33

FED. R. CIV. P. 15(a).  The Court declines to grant leave to amend for reasons that follows.

The Fifth Circuit has held, more than once, that where qualified immunity is at issue, civil rights plaintiffs may not be "allowed to continue to amend or supplement their pleading until they stumble upon a formula that carries them over the threshold."  *See Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).  At some point, a court must decide that a plaintiff has had a fair opportunity to make his case and, if a cause has not been established after such a time has passed, then the court should dismiss the suit.  *See Jones*, 188 F.3d at 326-27 (quoting *Jacquez*, 801 F.2d at 792).  This case was filed in December of 2006, and McCullough has had several opportunities to present his claims since that time.  At the Court's request, McCullough filed a more definite statement of his claims.  (Doc. # 14).  After considering all of the pleadings filed by McCullough, the Court requested an answer from fifteen defendants in an order entered on April 26, 2007.  (Doc. # 17).   Thereafter, the Court allowed McCullough to file an amended complaint to add another defendant.  (Doc. # 44). Under these circumstances, the Court need not allow another amended complaint, which was submitted after the defendants had already filed a well-supported motion for summary judgment.  *See Wentwood Woodside I, L.P. v. GMAC Commercial Mortgage*, 419 F.3d 310, 318 (5th Cir. 2005) (finding no abuse of discretion for denying leave to amend post summary judgment);  *see also  Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) ("'A

busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.'"); *Briddle v. Scott*, 63 F.3d 364, 380 (5th Cir. 1995) (same).

More importantly, it would be futile to allow the amended complaint that McCullough proposes, which seeks add new claims for relief under the federal habeas corpus statutes found at 28 U.S.C. § 2254. To the extent that McCullough now seeks federal habeas corpus relief from the disciplinary conviction entered against him on August 18, 2006, the statute of limitations has expired on federal habeas corpus review. *See Kimbrell v. Cockrell*, 311 F.3d 361, 363 (5th Cir. 2002) (holding that the one-year statute of limitations begins to run on the date the disciplinary conviction was entered). A court need not grant leave to amend when the filing would be futile because the proposed claims are time-barred. *See Newby v. Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008) (citing *FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994)).

In addition, as explained above, any challenge to McCullough's disciplinary case is governed by the Due Process Clause. McCullough cannot demonstrate that his disciplinary conviction violated his constitutional right to due process because none of the sanctions imposed implicated a constitutionally protected liberty interest. *See Madison*, 104 F.3d at 768; *Malchi*, 211 F.3d at 958. "A district court acts within its discretion when [denying] a motion to amend that is frivolous or futile." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 771 (5th Cir. 1999). Because the

proposed amended complaint does not contain a valid claim, McCullough's motion for leave to amend is denied.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The defendants' motion for summary judgment (Doc. # 62) is **GRANTED**.

2.    The plaintiff's motion in opposition and his motion for leave to amend the complaint (Doc. # 71, # 74) are **DENIED**.

3.    To the extent that it is not moot, the plaintiff's motion to supplement his response to the defendants' summary judgment motion (Doc. # 73) is **GRANTED**.

4.    The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>November 24              </u>, 2008.

<u>Nancy F. Atlas</u>
Nancy F. Atlas
United States District Judge